IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

FILED
OCT 26 2020
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

TONYA ROBERTSON,

    Plaintiff,

v.

CIVIL ACTION NO.: 1:19CV221
(KLEEH)

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

**I.**    **Introduction**

    This case arises from the denial of Plaintiff, Tonya Robertson's ("Plaintiff") application for Title II Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, Mark O'Hara ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by Appeals Council was denied, making the ALJ's decision the final decision of Defendant. Plaintiff seeks judicial review of Defendant's decision.

    The undersigned has considered the parties' briefs and the record on appeal. The facts and legal arguments have been adequately presented. Accordingly, the decisional process would not be significantly aided by oral argument. Therefore, the recommendations of the undersigned are set forth below.

## II. Factual/Procedural History

Plaintiff filed her DIB and SSI applications on or about November 8, 2016, which alleged disability beginning on July 30, 2016. R. 10.[1] In her application, Plaintiff alleged disability because the following conditions: reflex sympathetic dystrophy, chronic pain, anxiety, depression, insomnia, hives, and obesity. R. 254-255, 261-268. Plaintiff's application was denied initially and upon reconsideration. R. 159-163, 164-167, 169170, 171-173, 175-177, 178-180, 184. Plaintiff requested a hearing before an ALJ. The hearing occurred on June 15, 2018. R. 39-81. Following the hearing, the ALJ issued an Unfavorable Decision, finding that Plaintiff is not disabled within the meaning of the Social Security Act. R. 10-23. Plaintiff requested review of this decision, but her request was denied by the Appeals Council on October 7, 2019, making the ALJ's decision the final decision of the Commissioner. R. 1-5.

Plaintiff filed her Complaint on December 11, 2019. ECF No. 1. Defendant filed his Answer on February 18, 2020. ECF No. 8. On the same date, Defendant filed a certified copy of the Social Security Administrative Record. ECF No. 9. On March 20, 2020, Plaintiff filed her Motion for Summary Judgment and Memorandum in Support. ECF No. 11 and 12. According to her brief, Plaintiff claims that Defendant's decision is not supported by substantial evidence, and that her reflex sympathetic dystrophy, chronic pain, anxiety, depression, insomnia, hives, and obesity render her disabled within the meaning of the Social Security Act. ECF No. 12. Defendant filed his Motion for Summary Judgment and Memorandum in Support on April 20, 2020. In it, Defendant argues that substantial evidence exists for the ALJ's decision. ECF Nos. 14 & 15.

---

[1] Plaintiff previously filed a DIB application. Said claim was denied by ALJ on August 3, 2016. No appeal was filed.

## III. ALJ Decision

### A. The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity. § 404.1520(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). § 404.1520(d). If impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. § 404.1520(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. § 404.1520(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age,

education, and work experiences. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

### B. ALJ Findings

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2019. R. 12. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 30, 2016, the alleged onset date. R. 12. At step two, the ALJ determined that Plaintiff has the following severe impairments (at least in combination): obesity, right leg complex regional pain syndrome, and a history of a back disorder. R. 13. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). R. 14.

The ALJ next determined that Plaintiff has the following residual functional capacity:

> to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and/or sit about 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) and 416.967(b), that involves no climbing ladders, ropes or scaffolds and other postural activities only occasionally (climb ramps and stairs, balance, kneel, stoop, crouch, crawl), that avoids concentrated exposure to temperature extremes, wetness, humidity, vibration, and respiratory irritants (such as fumes, odors, dust, gases, and poor ventilation), that avoids even moderate exposure to workplace hazards (such as moving machine parts and unprotected heights), and that is limited to occasional push/pull with the bilateral upper and lower extremities.

R. 15. The ALJ concluded that Plaintiff is capable of performing past relevant work as an administrative assistant and a medical transcriber, both of which involve sedentary work. The ALJ noted that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. R. 22. The ALJ, therefore, concluded that Plaintiff has not been under a disability as defined in the Social Security Act from July 30, 2016 through the date of the ALJ's decision, which is December 3, 2018. R. 22-23.

4

## IV. Motions for Summary Judgment

### A. The Standards

#### 1. Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but…must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (internal citations and quotations omitted). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and

5

quotations omitted). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds by Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Keeping these standards in mind, the undersigned will discuss the arguments raised on appeal.

### B. Arguments of the Parties

#### 1. Plaintiff's Arguments

Plaintiff argues that the ALJ erred in evaluating Plaintiff's residual functional capacity by: (1) failing to include a "logical bridge" in the ALJ's narrative discussion; (2) failing to explain how Plaintiff's severe right leg impairment was addressed within the ALJ's RFC assessment; (3) improperly exercising medical expertise that the ALJ did not and does not possess with respect to Plaintiff's pain management; and (4) utilizing an improper standard to evaluate Plaintiff's impairments. Plaintiff also argues that the ALJ failed to properly address the combination of Plaintiff's impairments. Finally, Plaintiff argues that the ALJ failed to properly address Plaintiff subjective complaints by failing to perform the first step in the 2-step analysis concerning the same; and by applying an erroneous standard.

#### 2. Defendant's Arguments

Defendant argues that the ALJ's conclusion vis-à-vis Plaintiff's RFC is supported by substantial evidence and permits meaningful judicial review. Defendant further argues that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely supported by the record.

C. **Discussion**

   1. **Residual Functional Capacity**

      a. **"Logical Bridge"**

Plaintiff first contends that the ALJ's opinion concerning her RFC failed to fulfill the narrative discussion requirements set forth in SSR 96-8. In particular, the Plaintiff argues that the ALJ failed to provide a logical bridge in his analysis, and this precludes meaningful review of the ALJ's RFC determination. For the reasons that follow, the undersigned is not persuaded by this argument.

> SSR 96-8 provides in relevant part as follows:
>
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) (FN7), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

The ruling further provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8.

"In performing [an RFC] assessment, an ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence []." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal citations and quotations omitted). "In other words, the ALJ must *both* identify evidence that supports his

7

conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Id.* (internal citations and quotations omitted) (emphasis in original). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two….[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694).

> The ALJ assigned the following RFC to Plaintiff:
>
> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally lift or carry 20 pounds; frequently life or carry 10 pounds; stand or walk with normal breaks for a total of about 6 hours in an 8-hour workday; and sit with normal breaks for a total of about 6 hours in an 8-hour workday. She can push or pull occasionally; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, and poor ventilation. She should avoid all exposure to hazards.

The ALJ's explanation and support for this assessment extends across seven (7) pages, including approximately thirty (30) single-spaced paragraphs. R. 15-22. Within these pages, the ALJ acknowledges the two-step process involved in arriving at an RFC for a social security claimant. Plaintiff's medical treatment and relevant portions of her testimony are also recounted extensively. After noting that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, the ALJ went on to opine that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence or other evidence in the record. In analyzing the evidence that supported this finding, the ALJ drew distinctions between Plaintiff's subjective complaints and contradictory evidence in the record, offering explanation for the decision to accept some evidence while rejecting others. R. 20.

8

Additionally, and with respect to the particular details of Plaintiff's RFC, the undersigned would note the ALJ's extensive discussion of the opinion evidence contained in the record. R. 20-22. The ALJ again noted that, the longitudinal record is not consistent with Plaintiff's allegations regarding the severity of her symptoms and limitations. The ALJ stated as follows:

> During the period at issue, the claimant has not generally received the type of treatment one would expect for a totally disabled individual. The claimant has been treated with routine and conservative care, consisting primarily of medications, injections, and other recommendations for conservative care, such as weight loss, physical therapy, and a home exercise program. Repeated physical examinations during the period at issue failed to demonstrate significantly decreased strength, sensation, or reflexes on a consistent basis, as would be expected with the degree of limitation alleged.

The ALJ's discussion continues for the balance of R. 20, and, perhaps most importantly notes that: "[n]o treating or examining physician has opined since the current alleged onset date of disability that the claimant is disabled or more limited than the above residual functional capacity, which suggests a limitation as not believed to be warranted." R. 20. The ALJ went on to state that "the limited degree of treatment required and relatively benign examinations during the period at issue belie allegations of disabling symptoms or functional limitations." R. 20.

The ALJ also discussed pertinent case law vis-à-vis the binding nature of the prior ALJ decision which was issued on a previously filed disability application, and which was substantially the same as that issued in the instant matter. R. 21. Finally, the ALJ discussed and relied upon the State Disability Determination Service ("DDS") assessments to the extent they were consistent with the prior ALJ's conclusions. R. 21-22.

The ALJ's RFC discussion, captured in detail at R. 15-22 of the administrative record, is clearly more than a recounting of medical evidence and a conclusion with no supporting logical bridge. To the contrary, and as demonstrated above, the ALJ provided at several points in his

9

opinion a logical bridge between the medical evidence and his conclusions. For these reasons, the undersigned would conclude that this assignment of error is without merit.

### b. Right Leg Impairment and RFC

The undersigned is similarly not persuaded by Plaintiff's argument that the ALJ did not adequately address Plaintiff's severe right leg impairment in the RFC. Though Plaintiff's right lower extremity RSD and the severe impairment assigned thereto by the ALJ were not explicitly and separately delineated within the ALJ's RFC analysis, this does not mean that the RFC did not address Plaintiff's right lower extremity RSD. To the contrary, contained within the ALJ's (extensive) analysis is consideration of the medical and opinion evidence concerning the severity and limitations of Plaintiff's right lower extremity, as contrasted with Plaintiff's subjective complaints regarding the same. R. 16-22. Therefore, implicit in the ALJ's RFC is the ALJ's consideration and provision for Plaintiff's right left leg impairment. Accordingly, and because the ALJ's analysis addressed Plaintiff's right lower extremity impairment, the undersigned would conclude that this assignment of error is without merit.

### c. Alleged Improper Exercise of Expertise in the Field of Pain Management

Plaintiff next argues that the ALJ improperly exercised medical expertise in the field of pain management, an expertise that the ALJ does not possess. In particular, Plaintiff takes issue with the following findings of the ALJ:

> During the period at issue, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant has been treated with routine and conservative care, consisting primarily of medications, injections, and other recommendations for conservative care, such as weight loss, physical therapy, and a home exercise program. Repeated physical examinations during the period at issue failed to demonstrate significantly decreased strength, sensation, or reflexes on a consistent basis, as would be expected with the degree of limitation alleged.

R. 20. Plaintiff cites *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) in support of her position. *Wilson* is distinguishable from the instant matter.

In *Wilson*, the ALJ referred Plaintiff to a medical expert, Dr. Marshall, for examination. Dr. Marshall's examination and resultant opinion did not differ much from that of Plaintiff's medical expert and treating physician, Dr. Flynn. That is, Dr. Marshall's and Dr. Flynn's diagnoses and conclusions were substantially the same, only differing from each other in degree, and both supported a finding that the plaintiff was unable to perform even sedentary work. *Wilson*, 220-222. Notwithstanding these findings, the ALJ opined that "Dr. Marshall's clinical findings did not support his conclusions as to plaintiff's functional limitations," and that "plaintiff had not suffered such a reduction of functional capacity to be precluded from engaging in sedentary work activity." *Id.* at 221 (internal citations and quotations omitted). Essentially, the ALJ discounted the opinion of both Plaintiff's treating physician and the agency's own medical expert, and substituted his own opinion based upon his observations and review of the record. That is not what occurred here. Rather, the undersigned believes this case is more analogous to *Pamela F. v. Berryhill*, TJS-17-2667, 2018 WL 5617169, at *3 (D. Md. Oct. 30, 2018).

In *Pamela F.*, the plaintiff argued that the ALJ inappropriately substituted his own expertise to interpret results from plaintiff's psychological evaluation, and cited *Wilson v. Heckler* in support of her argument. In rejecting the same, the district court noted that *Wilson* was distinguishable from *Pamela* F and explained that in *Wilson*, the ALJ disregarded the uncontradicted clinical findings of an examining physician (the agency's own expert) and a treating physician. By contrast, the ALJ in *Pamela F.* considered the opinion of the medical expert at issue in light of other examinations conducted by that same expert/physician, and in light of the opinions of the plaintiff's other treating providers. The ALJ found the medical expert's opinion to be less credible

11

in light of other contradictory evidence in the record. *Pamela F.*, 2018 WL 5617169, at * 3 (relying on *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) "[w]here a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

In the instant case, and as in *Pamela F.*, the ALJ did not discount the uncontroverted medical and expert opinions and substitute his own therefor. Rather, it appears that the ALJ noted the treatment Plaintiff received as reflected in the longitudinal record, and contrasted the same with Plaintiff's subjective complaints, finding that Plaintiff's complaints were not borne out by the evidence in the record, which included other medical expert evidence. Because this type of analysis is part and parcel of an ALJ's function (*see* 20 CFR 404.1529, 20 CFR 416.929, and SSR 16-3), this type of evaluation was appropriately made by the ALJ. Consequently, this assignment of error is without merit.

### d. Standard of Evaluation of Plaintiff's Impairments

Plaintiff next argues that the ALJ utilized an improper standard when he evaluated Plaintiff's impairments. Specifically, Plaintiff contends that, in making the statement regarding Plaintiff not receiving the type of medical treatment which would be expected of a totally disabled individual, the ALJ found that the determination of an individual's disability is based upon the type and degree of treatment received. The undersigned is not persuaded by this argument.

A review of the ALJ's decision, and in particular the statement at issue in context to the rest of the opinion, reveals that the statement is merely commentary on the medical evidence of record. Indeed, beyond this one sentence, there is no evidence or indication that the type and nature of treatment Plaintiff received was utilized as the standard by which the ALJ assessed the issue of Plaintiff's disability. For example, the statement at issue and the analysis that follows

does not directly tie Plaintiff's primarily conservative medical treatment to a finding that one who receives such type of treatment is necessarily not disabled. Rather, the statement at issue appears to be more closely reflective of the sentiment that Plaintiff's subjective complaints do not match with her treatment course as recommended by her physicians. Again, because such an assessment is integral to an ALJ's duties, the undersigned can find no error in this type of assessment.

### 2. Combination of Impairments

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's combination of impairments. Specifically, Plaintiff claims the ALJ failed to address in any manner the combined effects of Plaintiff's severe and non-severe impairments. For the reasons that follow, the undersigned would conclude that this assignment of error is without merit.

Plaintiff relies upon *Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) in support of her argument. When considering the quotation cited by Plaintiff in her brief at 12 in combination with Plaintiff's arguments, it seems that Plaintiff is advocating for a separate and distinct evaluation of Plaintiff's non-severe impairments and the combined effect of all of them, in addition to the evaluation set forth in the ALJ's opinion. The undersigned does not believe such an evaluation is a correct reading of *Hines, supra*. Rather, the "rule [that an ALJ must adequately explain his or her evaluation of the combined effect of impairments] merely elaborates upon the general requirement that an ALJ is required to explicitly indicate the weight given to relevant evidence." *Hines*, 872 F.2d at 59 (citing *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) and *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984)). A review of the ALJ's opinion reveals that the ALJ has appropriately indicated the weight given to relevant evidence.

Notwithstanding the above, the Court would note that at R. 13 of the Administrative Record, the ALJ did in fact address Plaintiff's severe and non-severe impairments, and whether

they resulted in disability alone or in combination. Indeed, in the first full paragraph of that page, the ALJ states:

> [t]he undersigned finds all other medical conditions found in the record (including hand osteoarthritis…gastroesophageal reflux disease…and high cholesterol, alone or in combination, to be nonsevere or not medically determinable because they have been responsive to treatment, did not require significant medical treatment, have caused no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a "severe" level for a continuous period of 12 months or expected to result in death, or have not been properly established by an acceptable medical source.

R. 12 (internal citations omitted). The ALJ went on to consider and evaluate Plaintiff's non-severe impairments of depression and anxiety at R. 12-13. The ALJ's discussion of Plaintiff's depression and anxiety continues for more than a page and approximately seven (7) single-spaced paragraphs. Following review of Finding 3, it is clear that the ALJ addressed Plaintiff's non-severe impairments, alone and in combination, and concluded that they caused no more than "minimally" vocationally relevant limitations. R. 12-13.

Finally, assuming that the ALJ did not sufficiently address the combined effect of Plaintiff's severe and non-severe impairments, the undersigned believes that remand of the instant matter is not appropriate. It is Plaintiff's burden to demonstrate that she is disabled. *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985) ("[t]he ultimate burden to prove disability lies on the claimant"). Notwithstanding her argument that the ALJ failed to consider in combination Plaintiff's severe and non-severe impairments, and assuming this to in fact be the case, Plaintiff has not argued specifically how her severe and non-severe impairments have resulted in functional restrictions and/or disability. Further, Plaintiff cites no evidence to support a contention that the combination of her severe and non-severe impairments has resulted in functional restrictions and/or disability. Without these arguments and this evidence, the undersigned cannot conclude

14

that any failure of the ALJ to sufficiently address the combined effect of Plaintiff's severe and non-severe impairments warrants remand.

### 3. Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. Specifically, Plaintiff contends that the ALJ failed to make a determination of whether Plaintiff has shown by objective medical evidence a condition reasonably likely to cause the pain claimed, but nevertheless went on to find that the degree of symptoms alleged by the Plaintiff were not consistent with the longitudinal record. The undersigned is not persuaded by this argument.

A review of the ALJ's decision reveals that the ALJ did not provide an explicit finding vis-à-vis the first step in the two-step analysis regarding substantive complaints. However, the ALJ's decision very clearly engages in such an analysis, eventually making the finding that Plaintiff suffers from severe impairments that result in functional limitations. R. 13-14; 15-22. Given the aforementioned analysis, the ALJ's failure to explicitly make such a finding is not reversible error in this instance. *Ketcher v. Apfel*, 68 F.Supp. 2d 629, 651 (D.Md. 1999) (finding that although the ALJ did not specifically state that the claimant's alleged pain could result from his medically determined impairments, it was clear that the ALJ made this determination since he noted that the impairments were "severe" and affected his functional capacity).

Plaintiff also argues that the ALJ erroneously required objective evidence to substantiate the persistence and limiting effects of her subjective complaints. This argument is not persuasive. The ALJ did not require objective evidence to substantiate the persistence of limiting effects of her subjective complaints. Rather, the ALJ compared Plaintiff's complaints to the longitudinal record and found that the complaints were not borne out by the evidence therein. R. 16-22. Such a finding is not necessarily limited to objective medical evidence. To the contrary, such a finding

15

would necessarily include Plaintiff's own complaints as voiced during medical appointments, physicians' observations of Plaintiff, and Plaintiff's hearing testimony. Therefore, this argument is without merit.

## V.     Recommendation

Substantial evidence supports the ALJ's findings and conclusions. Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion [11] for Summary Judgment be **DENIED** and Defendant's Motion [14] for Summary Judgment be **GRANTED**.

**Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.**

**A copy of such objections should be submitted to the District Judge of Record. <u>Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation</u>.** *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West

Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 26th day of Oct 2020.

_____
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE